UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW A. BROWN,

      Plaintiff,

vs.                              Case No. 3:20-cv-726-BJD-MCR

CHAPLAIN W. THOMAS,

      Defendant.

_____

## ORDER

## I. Status

Plaintiff Andrew A. Brown is proceeding on a pro se Complaint for Violation of Civil Rights (Complaint) (Doc. 1) against Defendant Chaplain W. Thomas, a chaplain employed by the Jacksonville Sheriff's Office (JSO), in his individual and official capacities. Id. at 1. In his Complaint, Plaintiff claims Defendant Thomas violated his rights under the First and Fourteenth Amendments to the United States Constitution and raises a claim pursuant to the Religious Land Use and Institutionalized Person Act (RLUIPA). Id. at 3.[1] Plaintiff claims Defendant Thomas, acting under color of state law, denied Plaintiff the right to be served vegan meals as an alternative to a kosher diet

_____

[1] Page numbers reflect the pagination assigned by the Court's electronic docketing system, which are found at the top of each page.

and deprived him of his right to observe Passover and the Feast of Unleavened Bread. Id. at 4.

Defendant Thomas filed an Answer and Affirmative Defenses to Complaint for Violation of Civil Rights in Chaplain Thomas's Official Capacity (Answer) (Doc. 12). Before the Court is Defendant's Motion for Summary Judgment (Motion) (Doc. 21 at 1, 21) seeking partial summary judgment. See Summary Judgment Notice (Doc. 22). In response, Plaintiff filed a document entitled, "Plaintiff's Facts Against Defendant's Motion for Summary Judgment[;] See Attached Declaration [Declaration of Andrew A. Brown]" Response (Doc. 24).

## II.  The Complaint

Plaintiff alleges, while he was confined at the Duval County Jail (jail), referred to by Defendant Thomas as the Pretrial Detention Facility (PTDF), Plaintiff wrote a January 8, 2020 request to Defendant Thomas to be placed on a vegan diet as an alternative diet because he had been told there was no kosher diet available in the PTDF and Plaintiff does not eat meat. Id. at 6. He did not receive a response to his request. Id. Again, on January 27, 2020, Plaintiff wrote a second request for a vegan diet, referring back to his original request. Id. After a few days, he was called to the Chaplain's Office for an interview. Id.

Chaplain Thomas conducted the interview and asked Plaintiff why he wanted to be on a vegan diet, and Plaintiff explained he was a Hebrew Israelite and according to his religion's dietary restrictions, he cannot eat meat products or any food that is not prepared in a clean place.  Id.  Plaintiff asked about a kosher option to confirm the information Plaintiff had acquired, and Defendant Thomas told Plaintiff that the facility does not provide kosher diet meals.  Id.  Plaintiff said he had heard that from officers and inmates and that is why Plaintiff requested a vegan diet as an alternative to a kosher diet.  Id.

Defendant Thomas provided Plaintiff with a questionnaire to fill out.  Id.  Plaintiff explained he has a language barrier and has difficulty spelling without a dictionary.[2]  Id. at 7.  Defendant Thomas responded, write what you can spell.  Id.  On February 6, 2020, Defendant Thomas denied Plaintiff's request, stating, "the sincerity of your claims cannot be confirmed."  Id.  Upon entering the jail, Plaintiff told the booking officer he was a Hebrew Israelite.  Id.

On March 12, 2020, Plaintiff wrote another request to the Chaplain's Department complaining he was having problems with obtaining a vegan diet.  Id.  He explained he is a Hebrew Israelite, which can be confirmed by reviewing

---

[2] The record demonstrates Plaintiff is from Jamaica and his first language is Jamaican Patois, an English-based creole language with West African influences.  (Doc. 21-3 at 7, 10-11).  He has an eighth-grade education and does not feel proficient in English, particularly in writing English, but he does understand English.  Id. at 10.

his file at the jail. <u>Id</u>. On March 13, 2020, Plaintiff received a reply stating he would be provided with a follow-up with the Chaplain. <u>Id</u>. Plaintiff never received a follow-up with the Chaplain. <u>Id</u>.

On March 3, 2020, Plaintiff wrote a request to the Chaplain's Department stating he would like to observe the Passover and the Feast of Unleavened Bread starting on April 1-8, 2020. <u>Id</u>. at 8. Plaintiff states he did not receive a response to this request. <u>Id</u>.

On March 30, 2020, Plaintiff wrote a grievance complaining he had not received a response to his request. <u>Id</u>. He stated he is a sincere Hebrew Israelite and according to his faith, he must observe the high holy days. <u>Id</u>. On that same day, he received a response from Defendant Thomas. <u>Id</u>. Defendant Thomas, in denying the grievance, said, "[o]ur current policy does not include accommodating the Feast of Unleavened Bread and Passover Meals at this time[.] The correct dates are the evening of Wednesday 4/8 thru Thursday Evening 4-16-2020 for your personal observance and/or worship." <u>Id</u>.

Plaintiff, on April 1, 2020, appealed the denial of the grievance, advising Defendant Thomas that he stated the wrong dates for worship as Plaintiff is not a Jew but is a Hebrew Israelite and the dates of observance are different, explaining that Hebrew Israelite Passover is April 1, 2020, and the Celebration for the Feast of Unleavened Bread is from April 2 to 8, 2022. <u>Id</u>. at 9. Plaintiff further complained he was being deprived of his rights under the First and

Fourteenth Amendments.  Id.  Plaintiff states the jail has policies allowing religious observance by other faiths, but not for Hebrew Israelites.  Id. at 10. On April 16, 2020, he received a response to his appeal stating the inmate has been released.  Id.  That was not the case as Plaintiff was still confined in the jail.  Id.  Ultimately, on May 6, 2020, the appeal was denied, and Plaintiff submits that the reason for the decision on appeal is "hid[d]en."  Id.

On April 23, 2020, Plaintiff wrote a request to food services asking if the jail provides kosher meals.  Id.  Food services responded, yes the jail provides kosher meals.  Id.

In sum, Plaintiff provides:

> (1) I was deprived from the vegan meals as an alternative for the kosher diet[;] (2) I have been force[d] to eat tainted food.  I was discriminated against my [religion] and my way of life[;] (3) I was deprived the right to freely exer[c]ise my religious belief, observing the Passover and the celebration for the Feast of Unleavened Bread meal as part of my religious [practice][;] (4) not having A policy to accommodate Hebrew Israelites.  But there is a policy for other [religions].  Chaplain Thomas is responsible for all of this.

Id. at 11-12.

As injuries, Plaintiff states he has been subjected to pain and suffering, suffering from mental anguish.  Id. at 11.  As relief, Plaintiff seeks a declaratory judgment asking that the Court enter judgment that Plaintiff's rights under the Constitution and laws of the United States have been violated

by the acts described in the Complaint; a permanent injunction ordering Defendant Thomas to put in place a policy for Hebrew Israelites to practice their faith; compensatory damages in the amount of $175,000; punitive damages in the amount of $235,000; a jury trial; and recovery of costs and any additional relief the Court deems just, proper and equitable. Id. at 11, 13.

In response to the questions concerning the exhaustion of administrative remedies, Plaintiff states he grieved the fact he was deprived of vegan meals as an alternative for a kosher diet and grieved the matter that he was deprived of the right to freely exercise his religious beliefs of observing Passover and the celebration for the Feast of Unleavened Bread. Id. at 14.

### III. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington,

381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (per curiam) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary

judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing

<u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578

(11th Cir. 1994)).

## IV.  Motion for Summary Judgment

### A.  JSO Policies and Procedures

Defendant Thomas submits that JSO policy provides that inmates may participate in established practices of their faith, inmates may request a special religious diet through the electronic tablet system, but that some components of the practice of their faith may be restricted due to identified safety and security threats.  Motion at 2-3.  If an inmate requests religious accommodation meals, the Chaplaincy Services Department has the inmate complete a questionnaire, the Chaplain reviews the questionnaire and interviews the inmate concerning his request and explains the decision to the inmate. <u>Id</u>. at 3.  Generally, at the PTDF, three religious accommodation meals are requested: (1) vegetarian; (2) vegan; and (3) kosher.  <u>Id</u>.

The jail provides a grievance system.  <u>Id</u>.  If an inmate disagrees with the Chaplaincy Services Department's decision, the inmate can file a grievance to be addressed by the Chaplaincy Services Department.  <u>Id</u>.  If the inmate does not agree with the results of the grievance, the inmate may appeal.  <u>Id</u>. at 3-4.

## B.  Defendant's Statement of Facts

Defendant Thomas recognizes that Plaintiff professes to be a Hebrew Israelite and claims to be prohibited from eating meat.  Motion at 4.  In January 2020, Plaintiff requested a vegan diet based on his religious beliefs and met with Chaplain Thomas.  Id.  Chaplain Thomas denied the religious accommodation diet due to lack of sincerity.  Id.  In March 2020, Plaintiff requested special meals for observance of the Passover and Feast of Unleavened Bread, and this request was denied with the explanation that the PTDF policy did not include accommodating holy day religious meal requests, but Plaintiff could personally observe and worship during these holy days.  Id. at 4-5.

In July 2020, a PTDF doctor placed Plaintiff on a vegan diet.  Id. at 5. Plaintiff grieved the delay in being provided a vegan diet, and he was finally provided vegan meals in August, 2020.  On June 3, 2021, Plaintiff was transferred to the Florida Department of Corrections.  Id.

## C.  Observations

Defendant Thomas, in his Declaration, states he: "always followed the rules, directives, and orders of the JSO in performing my duties as Chaplain." (Doc. 21-1 at 6).  He adds, "I have always been professional to every inmate, including Mr. Brown, and I have done everything within the rules and my jurisdiction to accommodate inmates."  Id.  Chief George C. Pratt, in his

Declaration, states he: "always followed the rules, directives and orders of the JSO in performing my duties as Chief." (Doc. 21-2 at 6). Chief Pratt adds, "[a]ll JSO personnel are required to follow the procedures governing reasonable accommodations for various religious faiths." Id.

Upon review, the record demonstrates there were several blunders made by the Chaplaincy Department /jail staff in the handling of Plaintiff's requests for religious accommodations. First, Plaintiff received no response to his initial January 8, 2020, request for a vegan diet addressed to the Chaplaincy Services Department. (Doc. 21-1 at 22). It was not until Plaintiff filed a second request on January 27, 2020, that he received a response to his request for a vegan diet. Id. at 24.

Plaintiff alleges he received no response to his March 3, 2020, request to the Chaplaincy Services Department concerning Plaintiff's request to observe the Passover and the Feast of Unleavened Bread. Complaint at 8. Upon review, the record shows Plaintiff is mistaken as he did receive a response/inquiry dated March 16, 2020: "Jewish Passover are for devout Jewish Inmates. Are you part of the Aleph Institute?"[3] (Doc. 21-1 at 31).

---

[3] Although not a model of clarity, this response implies that members of the Hebrew Israelite faith are not in parity with followers of the Jewish faith and only devout Jews will be allowed to celebrate Passover, apparently with the aid of the Aleph Institute.

Plaintiff filed a March 12, 2020 request to the Chaplaincy Services Department again asking to be provided vegan meals as he is a Hebrew Israelite.  Id. at 26.  The response states, Plaintiff's "name will be provided to the Chaplain for follow up."  Id.  The follow-up did not occur, and the matter was summarily closed.[4]  Id.

Finally, on March 30, 2020, Plaintiff filed a grievance asking for Passover meals as a Hebrew Israelite who must observe the high holy days of his faith.  Id. at 33.  Plaintiff received a response relating, "current policy does not include accommodating the Feast of Unleavened Bread Passover meal at this time."[5]  Id.  It continued, "[t]he correct dates are the evening of Wednesday 4/8 thru Thursday evening 4/16 for your personal observance and/or worship."[6]  Id.

Unlike the grievance response, Defendant Thomas, in his Declaration recognizes that, usually, the high holy days for the two faiths differ.  (Doc. 21-1 at 6).  Plaintiff appealed the decision denying his grievance, noting that the chaplain assumed the wrong days of Passover, repeating that he is not a Jew

---

[4] Based on the record before the Court, it is unclear whether staff failed to provide Plaintiff's name to the Chaplain for follow-up or whether the Chaplain simply failed to follow up once given Plaintiff's name.  Either way, no follow up occurred and staff simply closed the matter.

[5] No mention is made that the rejection of the grievance was based on the conclusion that Plaintiff lacked sincerity in his religious beliefs.

[6] Defendant Thomas avers in his Declaration, "[w]hile members of both the Hebrew Israelite and Jewish faith celebrate Passover and the Feast of Unleavened Bread, the dates on which these holy days fall usually differ."  (Doc. 21-1 at 6).

but a sincere Hebrew Israelite, explaining the Hebrew Israelite celebration falls on different days from the Jewish celebration, and noting, as a sincere Hebrew Israelite, he must adhere to the commandment of his faith.  (Doc. 21-1 at 33).

Curiously, on April 16, 2020, staff closed Plaintiff's appeal, stating "[i]nmate has been [r]eleased."  Id.  That was not the case.  On April 17, 2020, Plaintiff appealed, stating he was still in the jail.  Id.  At that point, on May 6, 2020, the notation states Chief Pratt handled the grievance, and the disposition is recorded as resolved, not in favor of the inmate.  Id.  No explanation for the decision is provided either in the grievance response provided to the Court or in the Declaration of Chief Pratt, although Chief Pratt states that Hebrew Israelite inmates commonly receive meals which are vegan or vegetarian for religious diet accommodations.  (Doc. 21-2 at 3).  No mention is made in the documents before the Court that Plaintiff's March 30, 2020 grievance seeking religious accommodation was denied due to identified safety and security threats or for Plaintiff's lack of sincerity.[7]

---

[7] Chief Pratt, in his Declaration, states, generally, if an inmate is denied a religious accommodation meal and the denial is appealed, Chief Pratt will meet with the inmate to discuss the request and the inmate's religious dietary requirements.  (Doc. 21-2 at 5).  Although Plaintiff's grievance concerns his request to be placed on "Passover meals" and Plaintiff appealed the decision, Chief Pratt does not attest in his Declaration that he met with Plaintiff to discuss Plaintiff's request for Passover meals and Plaintiff's religious dietary requirements.  (Doc. 21-2 at 1-7).

### D. Exhaustion

The Court will address the threshold issue of whether Plaintiff exhausted administrative remedies, as required by the Prison Litigation Reform Act (PLRA).  In his Answer, Defendant Thomas asserts Plaintiff failed to exhaust all administrative remedies prior to initiating this action, and his claims are therefore barred.  Answer at 5.  Defendant Thomas, in his Motion, states, although Plaintiff raises two issues in his Complaint, the denial of his request for a vegan diet and the denial of his request for special holy day meals, the only matter properly exhausted is the request for special holy day meals.  Motion at 7-9.

Upon review, the only matter grieved and properly exhausted is Plaintiff's request for Passover meals for the high holy days.  (Doc. 21-1 at 33-34).  Although Plaintiff made several requests for a vegan diet, he did not file a grievance concerning a vegan diet and appeal the denial of a grievance nor did he appeal the decision of the Chaplain concerning a vegan diet.

The PLRA requires that an inmate exhaust available administrative remedies before filing a § 1983 claim concerning prison conditions.  <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted.").  Also, the PLRA requires proper exhaustion.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006).  In <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th

Cir. 2008), the Eleventh Circuit established a two-step process that the district court must employ when examining the issue of exhaustion of administrative remedies. As such, the district court looks to the factual allegations in the motion and those in the response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. If dismissal is not warranted, the district court is required to make specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). See Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam). Defendant Thomas bears the burden of proving that Plaintiff has failed to exhaust his available administrative remedies.

Chief George C. Pratt, in his Declaration explains, if an inmate disagrees with the Chaplaincy Services Department's decision, the inmate can file a grievance through the electronic tablet system, and if the inmate does not agree with the results of the grievance, the inmate may appeal. (Doc. 21-2 at 4-5). Defendant Thomas, in his Declaration, explains, if an inmate disagrees with the Chaplaincy Services' Department's decision, the inmate may file a grievance through the electronic tablet system, and if the inmate does not agree with the results of the grievance, the inmate may file an appeal through the electronic tablet system. (Doc. 21-1 at 4). The electronic tablet system

maintains a record of all of the religious accommodations requests, grievances, and appeals filed by an inmate.  Id.

The record shows there is an established grievance procedure at the jail, and Plaintiff fully utilized this procedure, at least on a couple of occasions.  He filed a grievance concerning his request for Passover meals and he filed a grievance concerning a delay in being provided a medically ordered vegan diet. (Doc. 21-1 at 28-29; 33-34).  He properly appealed the decisions concerning both of these matters.  Id.  Thus, he properly exhausted the matter of special holy day meals.

Although Plaintiff refers to his March 30, 2020 grievance and its resolution, Plaintiff also mentions all of his requests for a vegan diet, and contends he properly exhausted all of his claims because he need not repeatedly file grievances about the same issue.  Response at 2-4.  Upon due consideration, there are two discreet issues: (1) the request for a vegan diet as a Hebrew Israelite; and (2) the request for special holy day meals or Passover meals as a Hebrew Israelite.

Accepting Plaintiff's version of the facts as true, under the first step of the two-step process, a dismissal of the claim for a vegan diet for lack of exhaustion is not warranted at the first step.  As such, the Court proceeds to the second step in the two-part process where the Court considers the Defendant's arguments regarding exhaustion and makes findings of fact.

To fully exhaust, Plaintiff was required to file a grievance, and if dissatisfied with the response to the grievance, file an appeal.  He filed a grievance, and he appealed the denial of his grievance.  (Doc. 21-1 at 33-34). Here, Plaintiff properly grieved the matter of Passover meals or holy day meals using the two-step process and the electronic tablet system.[8]

Plaintiff never filed a grievance concerning the Chaplain's decision to deny Plaintiff's request for a vegan diet.  He never even sought to appeal the Chaplain's decision.  Filing numerous requests does not absolve Plaintiff of the requirement to properly exhaust his administrative remedies.  As such, the Court concludes that Defendant's Motion is due to be granted with respect to the exhaustion issue as to Plaintiff's claim against Defendant Thomas concerning the request for a vegan diet.

### E.  Fourteenth Amendment – Failure to State a Claim

As to Plaintiff's exhausted claim, that he was improperly denied his request for appropriate meals as a Hebrew Israelite for high holy days, the Court will address the matter of whether Plaintiff has failed to state a claim upon which relief can be granted under the Fourteenth Amendment.  The Fourteenth Amendment prohibits any state from denying any person within its jurisdiction equal protection of the law.  See U.S. Const. amend. XIV, sec.

---

[8] The record shows Plaintiff grieved the matter of the delay in receiving his medically prescribed vegan diet; however, he does not raise this particular claim in his Complaint. (Doc. 21-1 at 28-29).

1.  Here, the question is whether Plaintiff has been denied equal protection of the law within the meaning of the Fourteenth Amendment.

Plaintiff contends there is a policy to accommodate or provide other religions with appropriate meals for high holy days, but there is no comparable policy to accommodate Hebrew Israelites.   Complaint at 12.   Defendant Thomas submits that Plaintiff's claim is conclusory and argues that Plaintiff provides no further allegations supporting this purported claim.  Motion at 10. As such, Defendant Thomas asserts Plaintiff has failed to state a claim for relief for violation of his Fourteenth Amendment right to equal protection of the law.  Id.

Generally, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

For its review, the Court accepts the facts in the Complaint as true and views them in the light most favorable to Plaintiff.[9]  In order to survive a motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), however, "the allegations must state a claim for relief that is plausible, not merely possible."  Gill v. Judd, 941 F.3d 504, 511 (11th Cir. 2019) (citation omitted).

The Court must read a plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).  However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff.  Walker v. Williams, No. 21-10597, 2022 WL 363809, at *3 (11th Cir. Feb. 8, 2022) (per curiam) (not reported in Fed. Rptr) (the court does not serve as de facto counsel or rewrite deficient pleadings); Freeman v. Sec'y, Dep't of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (per curiam) (citing GJR Invs., Inc. v. Cnty. Of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "a person" acting under the color of state law deprived him of a right secured under the

---

[9] In considering the motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations.  Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted).  As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

United States Constitution or federal law.  <u>See</u> 42 U.S.C. § 1983.  A plaintiff, in raising a claim pursuant to section 1983 must allege that (1) the defendant deprived him or her of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  <u>Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted).

Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss unless a document "is central to the plaintiff's claim" and incorporated by reference in the complaint. See <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (per curiam) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). In fact, Rule 12 provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." <u>See</u> Fed. R. Civ. P. 12(d). <u>See also</u> <u>Trustmark Ins. Co. v. ESLU, Inc.</u>, 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

However, the Eleventh Circuit has held a court may consider extrinsic evidence when ruling on a 12(b)(6) motion if a document "is (1) central to the plaintiff's claim and (2) undisputed." <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th

Cir. 2005) (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002)). Thus, when a plaintiff, in his complaint, incorporates by reference a document that is central to his claim, and the opposing party does not contest the authenticity of the document, a court may consider it when ruling on a motion to dismiss. <u>Id.</u>

Here, both Plaintiff in his Complaint and Defendant Thomas in his Motion rely on the requests and grievances filed by Plaintiff and the responses thereto of the jail officials and the Chaplain.  Indeed, Defendant Thomas raises the issue of failure to state a claim in his motion for summary judgment, attaching the relevant documents.  As such, the Court will fully consider these documents when addressing Defendant's contention that Plaintiff has failed to state a plausible claim for relief.

Upon review of the Complaint, there are factual allegations supporting Plaintiff's contention that a jail policy exists to allow other religions to be provided appropriate meals for high holy days, but there is no comparable policy to accommodate Hebrew Israelites.  Plaintiff wrote a very specific request to the Chaplaincy Services asking, "to observe Passover and the feast of unleavened bread 4/1-8/20."  (Doc. 21-1 at 31).  <u>See</u> Complaint at 8.  The

Chaplaincy Services responded: "Jewish Passover are [sic] for devout Jewish Inmates.  Are you a part of the Aleph Institute?"[10]  (Doc. 21-1 at 31).

In the Complaint at 8, Plaintiff specifically points to the response he received to his grievance concerning his request to receive Passover meals for high holy days as a Hebrew Israelite. (Doc. 21-1 at 33).  The relevant grievance response states: "Mr. Brown, Our current policy does not include accommodating the Feast of Unleavened Bread Passover meal at this time.  The correct dates are the evening of Wednesday 4/8 thru Thursday evening 4/16 for your personal observance and or worship.  Thank you, Chaplaincy Services." Id.  Once again, the Chaplaincy Services referred to Jewish religious holidays and observances, referring to the dates for Passover celebrated by Jews, not Hebrew Israelites.

In the Complaint, Plaintiff states that the jail policy accommodates other religions, but not his religion, referencing the Chaplaincy response of February 6, 2020, noting dietary restrictions or limitations would be accommodated for

---

[10] The Aleph Institute is a Jewish humanitarian organization with prison programs focusing on Jewish inmates during their prison stay, helping with the observation of Jewish holidays, practices, food, and materials.  The record does not demonstrate whether members of the Aleph Institute provide PTDC Jewish inmates with meals for Passover.  Based on the March 16, 2020 response, perhaps members of the Aleph Institute provide Jewish inmates with food delivered from outside the jail - during special occasions, but the matter is certainly unclear based on the record before the Court.

those of sincere religious beliefs.[11]  Complaint at 10.  Plaintiff, construing the Chaplaincy's March 30, 2020 response as referring to a policy allowing for Jewish inmates to celebrate high holy days, appealed the decision, explaining that he is not a Jew, pointing out the days for observance for Hebrew Israelites' Passover are different from Jewish Passover, stating he is a sincere Hebrew Israelite and needs to adhere to the commandment of his faith, and complaining that the Chaplaincy is depriving him of his rights to freely exercise his religious beliefs in violation of the First and Fourteenth Amendments.  (Doc. 21-1 at 33).  Plaintiff appealed the decision denying his grievance concerning denial of Passover meals as a Hebrew Israelite, and the Chaplaincy responded that the inmate has been released and closed the grievance.  Id.  Plaintiff appealed again, as he had not been released, and without explanation the matter on appeal was "[r]esolved [n]ot in favor [of] the inmate[.]"  Id.  Plaintiff states the reasoning for this response is "hid[di]n."  Complaint at 10.  Upon review, not only is the reason for denying the appeal not found in the tablet notes, the Declarations of Thomas and Pratt do not address or provide the reason for the decision on appeal.

Plaintiff claims Defendant Thomas discriminated against Plaintiff's religion, the jail has a policy which accommodates other religions but not

---

[11] Food Services advised Plaintiff it does serve kosher meals, although the provision of kosher meals to an inmate has to be approved by the medical department.  (Doc. 21-3 at 85).

Hebrew Israelites, Chaplain Thomas is responsible for the deficiencies of the jail's policy that excludes Hebrew Israelites, and as relief, Plaintiff asks that a policy be put in place for Hebrew Israelites to be able to practice their faith. Id. at 11-12.

Upon review, Plaintiff has certainly nudged the equal protection claim across the line from conceivable to plausible.   Twombly, 550 U.S. at 570. Indeed, he has alleged enough facts to state an equal protection claim pursuant to the Fourteenth Amendment that is plausible on its face against Defendant Thomas.  Accordingly, Defendant's Motion will be denied in this respect.

### F.  Fourteenth Amendment Claim - Evidence

Defendant Thomas avers he did not violate the Equal Protection Clause of the Fourteenth Amendment.  Motion at 10-11.  Here, Plaintiff contends there is a policy of not recognizing the Hebrew Israelite faith and its practices that substantially burdens the Plaintiff's ability to practice his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. Brown v. Sec'y, Dep't of Corr., No. 8:10-cv-2101-T-17TGW, 2011 WL 766388, at *3 (M.D. Fla. Feb. 25, 2011) (not reported in F.Supp.2d) (citation and quotation omitted).

In response to a request, staff provided the following information, "[t]he Jacksonville Sheriff's Office, Department of Corrections, **accommodates**

**inmates who have a sincere religious belief concerning their faith and dietary restrictions and or limitations**." (Doc. 21-1 at 24) (emphasis added). Initially, Plaintiff was told that the sincerity of his claim of needing a vegan diet as a Hebrew Israelite could not be confirmed. Id. Apparently, later on, the question of Plaintiff's sincerity was completely dropped and instead he was advised that "Jewish Passover are [sic] for devout Jewish Inmates."[12] Id. at 31. Additionally, he was advised JSO's current policy "does not include accommodating the Feast of Unleavened Bread Passover meal at this time." Id. at 33. No mention is made of any lack of sincerity of belief on Plaintiff's part in these subsequent responses.

In his Complaint, Plaintiff alleges that the observation of the high holy days through observance of the high holy day meals "is essential to practicing his religion." Brown, 2011 WL 766388, at *3. Plaintiff complains he was deprived of observing Passover and the Feast of Unleavened Bread. Complaint at 4. Plaintiff notes, as a sincere Hebrew Israelite he must observe the high holy days according to his faith. Id. at 8. He reiterated, "as a sincere Hebrew Israelite I must adhere to the commandment of my God Yahweh." Id. at 9. Notably, he also states, he was forced to eat tainted food, discriminated against

---

[12] Defendant Thomas, in his Declaration, states that on August 4, 2020, he met with Plaintiff and found him to be sincere in his religious beliefs and approved him for a vegan meal. (Doc. 21-1 at 5). Of note, this act occurred *after* Plaintiff filed his Complaint on July 1, 2020.

based on his religion, and not allowed to observe the Passover and the
celebration for the Feast of Unleavened Bread in accordance with his faith.[13]
Id. at 11.

> Of import,

>> The Equal Protection Clause requires that the
>> government treat similarly situated people in a
>> similar manner. See City of Cleburne v. Cleburne
>> Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87
>> L.Ed.2d 313 (1985). To establish an equal protection
>> claim, "a prisoner must demonstrate that (1) he is
>> similarly situated to other prisoners who received
>> more favorable treatment; and [that] (2) the state
>> engaged in invidious discrimination against him based
>> on race, religion, national origin, or some other
>> constitutionally protected basis." Sweet v. Sec'y Dep't
>> of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006); see
>> also Schwarz v. City of Treasure Island, 544 F.3d 1201,
>> 1212 n.6 (11th Cir. 2008) (noting that "the equal
>> protection clause prohibits only intentional
>> discrimination").

Brown, 2011 WL 766388, at *4.

Plaintiff alleges that similarly situated inmates, such as the inmates of
the Jewish faith in the PTDF, are provided high holy day meals, but those of
the Hebrew Israelite faith are not provided high holy day meals. The responses
to Plaintiff's requests for high holy day meals supports Plaintiff's contention

---

[13] Plaintiff explains in his Complaint, as part of his faith, he must not eat meat, meat
products, or any food not prepared in a clean place. Complaint at 6. Additionally, as stated
during his deposition, during the Feast of Unleavened Bread, a person of sincere faith is not
to eat anything with yeast, baking soda, bread, pastries, cream of tartar, or ingredients used
to make batter or dough rise. (Doc. 21-3 at 22).

that some faiths are accommodated and provided with the appropriate meals during high holy days, but Hebrew Israelites are not accommodated and fall outside of the jail's policy.  (Doc. 21-1 at 31, 33).

Defendant Thomas provides a copy of JSO Order 698 (effective May 6, 2019), and it broadly states: "[i]nmates will have the opportunity to participate in established practices of their faith limited only by documentation showing a threat to the safety of persons in such activity or disruption of facility order." (Doc. 21-1 at 9).  Further, it provides that inmates may request a special religious diet through the electronic tablet system to be processed by Chaplaincy Services.  Id. at 11.  Of course, Plaintiff used the electronic tablet system to grieve his complaint for high holy day meals, but his request, grievance, and appeal were all denied, and notably no reason is provided for the denial of the appeal.

Although Defendant Thomas relies on Unit Procedure 698 (Doc. 21-1 at 14-20) (effective November 24, 2020), its effective date is after the period at issue in the Complaint (January 8, 2020 to April 16, 2020).  Complaint at 11. As such, the Court will not consider Unit Procedure 698 as its effective date renders it inapplicable to the allegations raised in the Complaint.

The second question for the Court's consideration is more difficult: is the Defendant's decision to deny high holy day meals to Plaintiff, a Hebrew Israelite, a product of intentional or purposeful discrimination.  Plaintiff must

show that the decision to provide high holy day meals or otherwise accommodate some religions but not him and his faith, Hebrew Israelite, "was motivated by intentional or purposeful discrimination." Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 816 (8th Cir. 2008).

The Court is unable, based on the evidence presented to it, to determine whether the Defendant Thomas consulted with religious leaders, including Hebrew Israelite leaders, and then made a reasoned attempt to accommodate all religious beliefs and not to discriminate against certain beliefs, including Plaintiff's beliefs and his fundamental practices as a Hebrew Israelite to celebrate the high holy days with Passover meals. Additionally, no security or institutional concerns were ever expressed in the responses to Plaintiff's grievances or appeals. Apparently religious accommodation meals are readily provided at the jail upon approval by the Chaplaincy Services Department and/or medical department, including vegetarian, vegan, and kosher options. There is nothing before the Court suggesting that the provision of Hebrew Israelite high holy day meals to Plaintiff would have posed a safety risk or caused undue disruption of the facility or presented a security threat to the institution. See JSO Order 698 (Doc. 21-1 at 9-12).

Defendant Thomas, in his Declaration, states there was no intent to discriminate against Hebrew Israelites or Plaintiff, as evidenced by the fact that the Chaplaincy Department told Plaintiff he could personally observe and

worship during Passover and the Feast of Unleavened Bread, just that the Chaplaincy Department and the jail would not support him in this observance by specially preparing meals for Plaintiff's Hebrew Israelite high holy days. (Doc. 21-1 at 6).  In his Deposition, Plaintiff explained that the food served by the jail is mixed together, like rice with meat, potato with meat, and he is left with eating just the vegetable, cake, and bread, occasional commissary snacks, and of course, on high holy days, he would be unable to eat a good portion of these remaining food items.  (Doc. 21-3 at 36-38).  Here, Defendant Thomas has not shown that other accommodations were made by providing Plaintiff with, for example, an alternative item to satisfy his religious dietary requirements for high holy days.  See Smith v. Gov. for Ala., 562 F. App'x 806, 814 (11th Cir. 2014) (per curiam) (the inmate's request for a fire pit was denied because he already had access to a candle).

Plaintiff alleges he was discriminated against based on his religion. Complaint at 11.  The record shows he was repeatedly denied his requests, grievances, and appeals to accommodate his faith by providing meals for high holy days, and not on the basis of the lack of sincerity or for specific safety and security reasons.  Plaintiff has demonstrated that while the Jewish Passover was recognized and apparently accommodated, including the provision of

kosher diets, Plaintiff's Passover and high holy days meal requirements were not comparably met.[14]

Plaintiff has put forth sufficient evidence to raise a material question of fact as to whether Defendant Thomas intentionally discriminated against him. Indeed, a claim of discriminatory purpose or intent, "implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Smith v. Hatcher, No. CV 219-167, 2021 WL 6006298, at *9 (S.D. Ga. Dec. 20, 2021) (quoting Pers. Adm'r of Mass v. Freeney, 442. U.S. 256, 279 (1979)).

In this action, Plaintiff has presented more than just a showing of disparity of treatment. Id. He has presented an ongoing, repeated denial of religious dietary accommodation for high holy days to a member of the Hebrew Israelite faith without the reviewer expressing or providing documentation showing a threat to the safety of persons or security threats, or disruption to the institution if the religious accommodation were to be provided. Again, the

---

[14] Again, since Defendant Thomas has not provided the reason for the denial of Plaintiff's appeal (Grievance #085793283), the decision that "[o]ur current policy does not include accommodating the Feast of Unleavened Bread Passover meal" remains unexplained. (Doc. 21-1 at 33). The Chaplaincy's response is not a model of clarity; the Court is unable to determine whether the Chaplaincy is referring only to the Hebrew Israelite Feast of Unleavened Bread Passover meal, since the response is based on Plaintiff's inquiry as a Hebrew Israelite and the specific dates for the high holy days relative to his faith, or the response encompasses all faiths and all requests for high holy day meals. The Chaplaincy's earlier response espousing that Passover is for devout Jewish inmates only serves to muddy the waters. (Doc. 21-1 at 31).

grievance response does not state the denial of the relief requested was based on the lack of sincerity on Plaintiff's part.[15]  As such, Defendant is not entitled to summary judgment on this claim.

## G. RLUIPA

Defendant Thomas contends that any claim for monetary damages against Chaplain Thomas based on RLUIPA is barred, as the only relief available under the Act is injunctive or declaratory relief.  Motion at 12. Plaintiff concedes this point and states he is only seeking declaratory and injunctive relief under RLUIPA.  Response at 4.

## H. MOOT

Defendant asserts that Plaintiff's request for declaratory and injunctive relief is moot.  Motion at 12-13.  Since Plaintiff is no longer confined in the PTDF or any other facility owned or operated by the City of Jacksonville, nor is he housed in a facility which employs Defendant Thomas, his demands for injunctive and declaratory relief are moot.[16]  "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for

---

[15] Of note, Defendant Thomas eventually stated he accepted Plaintiff's sincerity.  (Doc. 21-1 at 5).  Plaintiff alleges he identified himself as a Hebrew Israelite upon his admission to the jail.  Complaint at 7.  In his Deposition, he said he has been a Hebrew Israelite since 2017, acquiring his faith several years before he filed his 2020 religious requests and grievances. (Doc. 21-3 at 11).

[16] Plaintiff was transferred back to the Florida Department of Corrections and is currently confined at the Baker County Detention Center.  (Doc. 21-2 at 5); (Doc. 25).

declaratory and injunctive relief" even when "there is no assurance that he will not be returned to the jail." <u>Robbins v. Robertson</u>, 782 F. App'x 794, 799 (11th Cir. 2019) (quoting <u>McKinnon v. Talladega Cnty., Ala.</u>, 745 F.2d 1360, 1363 (11th Cir. 1984)).   Thus Circuit precedent forecloses Plaintiff's claim for injunctive and declaratory relief.

Of note, the exception to the rule in inapplicable.   Nothing before the Court shows Defendant Thomas attempted to evade jurisdiction by transferring Plaintiff, and Plaintiff has not made a showing that his complaints are capable of repetition, yet evading review.   <u>See</u> <u>United States v. Sanchez-Gomez</u>, 138 S. Ct. 1532, 1540 (2018) ("A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the **same complaining party** will be subjected to the same action again.'") (emphasis added).

Plaintiff no longer resides in the PTDF.   He names only Defendant Thomas, an employee of the PTDF, as a Defendant.   Thus, there is no longer a live case or controversy.

> "Article II of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was filed." <u>Id.</u> (citation and internal quotations omitted). "The doctrine of mootness provides that the requisite

> personal interest that must exist at the
> commencement of the litigation (standing) must
> continue throughout its existence (mootness)." Id.
> (citations, alterations, and internal quotations
> omitted).

KH Outdoor, L.L.C. v. Clay Cnty., Fla., 482 F.3d 1299, 1302 (11th Cir. 2007).

Accordingly, to the extent Plaintiff is seeking injunctive and declaratory relief against the Defendant, his claim for injunctive and declaratory relief against Defendant Thomas is due to be dismissed as moot. Summary judgment is proper on the claims of declaratory and injunctive relief.

## I. Individual Liability of Defendant Thomas

Defendant Thomas specifically addressed Plaintiff's Fourteenth Amendment claim. Motion at 1, 9-11. As stated above, the Court finds Plaintiff has plausibly stated a Fourteenth Amendment claim against Defendant Thomas. Thus, the Motion is due to be denied with respect to this contention. To the extent Defendant Thomas is asserting Plaintiff did not plausibly state a First Amendment claim, the Court concludes otherwise. Not only does he plausibly state a First Amendment claim, there also remain disputed issues of material fact.

Defendant Thomas does not specifically and fully address the First Amendment claim in his Motion. Instead, he summarily states Plaintiff fails

to allege any facts that would support a claim against Chaplain Thomas in his individual capacity. Id. at 14.

Upon review of the Complaint, the Court rejects Defendant's contention that Plaintiff fails to allege facts that would support a claim under the First Amendment against Defendant Thomas in his individual capacity. Indeed, Plaintiff's Complaint contains sufficient factual matter, accepted as true, to state a plausible First Amendment claim for relief:

> "To plead a valid free exercise claim, [Plaintiff] must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" Watts v. Florida Intern. University, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting Frazee v. Ill. Dep't of Employment Sec., 489 U.S. 829, 834 (1989)). "A [prison] should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, but only when the belief is 'truly held.'" Hathcock v. Cohen, 287 Fed. Appx. 793, 801 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter) (quoting Martinelli v. Dugger, 817 F.2d 1499, 1504-06, 1508 (11th Cir. 1987)).

Gardner v. Riska, No. 3:09-CV-482-J-32MCR, 2010 WL 11506602, at *3 (M.D. Fla. Dec. 27, 2010) (not reported in Fed. Supp.), aff'd, 444 F. App'x 353 (11th Cir. 2011).

Plaintiff identifies his religion, Hebrew Israelite, and contends that eating religiously authorized food for high holy days is a sincerely held tenet of

his religion.  See Walker v. Iske, No. 8:12-cv-1539-T-30AEP, 2012 WL 5341380, at *2 (M.D. Fla. Oct. 29, 2012) (not reported in F.Supp.2d) (the plaintiff raised a First Amendment claim alleging he is a Muslim, adheres to all tenets of his faith, and sincerely believes he must keep the diet mandated by the Holy Qur'an, but the district court found the allegations of the complaint concerning a denial of his right to exercise his religion were conclusory and lacking in specific facts to support a plausible claim).  Of note, based on the record, Defendant's denial of high holy day meals was not based on lack of sincerity.  Furthermore, Defendant Thomas did not reference budgetary and logistical limitations in denying Plaintiff's grievance for high holy day meals.

In this case, Plaintiff specifically states that the standard meals provided at the PTDF violate the requirements of his faith (including meat or meat mixtures or food not prepared in a clean place), that he may not consume according to his faith.  He notes his frequent requests for a vegan diet, in accordance with his faith.[17]

Defendant Thomas makes much of his assertion that he abided by all policies of the PTDF.  This too is at issue.  The Order 698, upon which

---

[17] Additionally, in response to questions concerning the details of high holy day meals, Plaintiff responded in his Deposition and described the food needed to abide by the tenets of his faith during high holy days, including needing a vegan tray, without baking soda, no bread, pastries, or any item containing yeast, cream of tartar, or ingredients used to make batter or dough rise.  (Doc. 21-3 at 22).

Defendant Thomas relies, states that inmates will have the opportunity to participate in established practices of their faith, "limited only by documentation showing a threat to the safety of persons in such activity or disruption of facility order." (Doc. 21-1 at 9). Further, the Order state inmates will not be discriminated against on the basis of their religion.  Id.

Nothing before the Court suggests that accommodation of Plaintiff's religious diet for the high holy days constituted a threat to safety or may cause disruption of facility order.  Indeed, Defendant Thomas never identified any "safety and security threats" which would justify restriction of Plaintiff's access to components, here a religious diet for high holy days, involved in the practice of Plaintiff's faith:  Hebrew Israelite.  Thus, this Court "cannot dismiss these claims on their merits without a factual inquiry in the [PTDF] interests justifying the alleged deprivation of plaintiff's right to free practice of his religion." Schneider v. Donald, No. CV 305-158, 2006 WL 1344587, at * 6 (S.D. Ga. May 12, 2006) (not reported in F.Supp.2d) (addressing a claim of failure to provide an alternative religious diet during the Jewish celebration of Passover).  See Shepard v. Peryam, 657 F.Supp.2d 1331, 1355 (S.D. Fla. 2009) (citing Ashleman v. Wawrzaszek, 111 F.3d 674, 677 (9th Cir. 1997) (recognizing that requiring a believer to defile himself by doing something completely forbidden by his religion is both different from and far more serious

than curtailing the expression of beliefs for which there are alternative expressions)).

Plaintiff followed the grievance requirements and exhausted his administrative remedies in an attempt to obtain Passover meals in accordance with his faith. Here, Plaintiff adequately alleges that Defendant Thomas, the Chaplain for the PTDF, has impermissibly burdened one of Plaintiff's sincerely held religious beliefs, to keep the high holy days holy by denying Plaintiff the requested Passover meals suitable to his faith and in compliance with a tenet of his faith.

Of note, both vegan, and kosher meals are served at the jail. Nevertheless, Defendant Thomas denied Plaintiff's request for Passover meals without reference to institutional security, safety, budgetary or logistical limitations. The Court liberally construes Plaintiff's Complaint, as it must, and finds the Motion is due to be denied. Plaintiff has alleged facts sufficient to show a plausible claim for a violation of a right to free exercise of religion under the First Amendment. Indeed, "the First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice." Wilson v. Moore, 270 F. Supp.2d 1328, 1349 (N.D. Fla. 2003) (quoting Levitan v. Ashcroft, 281 F.3d 1313, 1320

(D.C. Cir. 2002)), relying on <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 351 (1987).

### J. Compensatory Damages

Defendant Thomas contends Plaintiff cannot recover the compensatory monetary damages he seeks under § 1983.  Motion at 17-18.  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . ." <u>See</u> 42 U.S.C. 1997e(e).  As such, 42 U.S.C.§ 1997e(e) bars recovery for compensatory damages "stemming from purely mental or emotional harms." <u>Hoever v. Marks</u>, 993 F.3d 1353, 1358 (11th Cir. 2021) (en banc).

In short, pursuant to 42 U.S.C. § 1997e(e), the Prison Litigation Reform Act (PLRA) precludes Plaintiff from recovering compensatory damages because he has failed to allege any physical injury.  "We've recently held that an incarcerated plaintiff may not recover compensatory damages for mental or emotional injuries absent any physical injuries." <u>Mays v. Joseph</u>, No. 21-10919, 2022 WL 18981, at *2 (11th Cir. Jan. 3, 2022) (per curiam) (citing <u>Hoever</u>, 993 F.3d at 1359-60).  Upon review, Plaintiff has not alleged any physical injury.  "However, he may recover punitive and nominal damages in the absence of physical injury." <u>Id</u>. (citing <u>Hoever</u>, 993 F.3d at 1361-62).  A

liberal construction of Plaintiff's Complaint supports a contention that he is seeking nominal damages as he seeks, "any additional relief this court deems just." Complaint at 13.

Therefore, the Court grants the Motion to the extent Plaintiff is seeking compensatory damages from Defendant Thomas in his individual capacity.

## K. Qualified Immunity

Defendant Thomas invokes qualified immunity with respect to Plaintiff's claim of a First Amendment violation. Motion at 16-17. Defendant Thomas contends Plaintiff fails to demonstrate that the Defendant violated a clearly established rights, and therefore, he is entitled to qualified immunity from damages. This Court previously found Plaintiff is not entitled to seek compensatory damages; therefore, there is no call to address this defense with regard to Plaintiff's claim for compensatory damages. Of note, Plaintiff seeks punitive damages. Also, liberally construing Plaintiff's pro se Complaint, he seeks nominal damages.

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Muhammad v. Sapp, 388 F. App'x 892, 987 (11th Cir. 2010) (per curiam) (citation omitted). Thus, a jail chaplain sued in his individual capacity is entitled to qualified immunity for his discretionary

actions unless he violated clearly established statutory or constitutional rights of which a reasonable person would have known.  See Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)).  Qualified immunity allows jail chaplains to exercise their official duties without fear of facing personal liability.  Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).  The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times.  Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.), cert. denied, 138 S. Ct. 72 (2017).  Here, the uncontradicted evidence demonstrates Defendant Thomas was acting within the scope of his discretionary duties at the time of the alleged incidents, which Plaintiff does not dispute.  As such, Defendant Thomas carries his burden on qualified immunity and the burden now shifts to Plaintiff.

To overcome a qualified immunity defense, a plaintiff bears the burden to demonstrate two elements:  the defendant's conduct caused plaintiff to suffer a constitutional violation, and the constitutional violation was "clearly established" at the time of the alleged violation.  Alcocer, 906 F.3d at 951. Defendant admits, "[b]ecause a question of fact exists as to whether Plaintiff's

First Amendment rights have been violated, for purposes of this Motion, Chaplain Thomas only argues the second requirement – that Plaintiff's rights were not clearly established at the time Chaplain Thomas acted." Motion at 16. The Eleventh Circuit held the law can be "'clearly established' for qualified immunity purposes, 'only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.'" Shepard, 657 F. Supp.2d at 1345 (quoting Jenkins v. Talladega City Bd. of Ed., 115 F.3d 821, 826–27 n. 4 (11 Cir. 1997) (en banc)).

In support of his claim, Plaintiff states, when he was admitted to the jail, he listed his faith as Hebrew Israelite. He told Defendant Thomas it was a tenet of his faith to comply with its dietary requirements and he repeatedly complained about the food preparation and the type of food served and requested a vegan diet to comply with the dietary requirements of his faith when he heard the jail did not serve kosher food. He alleges Defendant Thomas told him kosher meals are not provided in the jail. Before Hebrew Israelite Passover, Plaintiff grieved the matter of receiving appropriate Passover meals for high holy days. Defendant Thomas denied his grievance, which was affirmed on appeal.

The question is whether the alleged constitutional violation was clearly established at the time of the alleged violation. The alleged violation occurred

in 2020, when Plaintiff asked for high holy days meals or Passover meals and

was denied the same.  Thus,

> "In order to determine whether a right is clearly
> established, we look to the precedent of the Supreme
> Court of the United States, this Court's precedent, and
> the pertinent state's supreme court precedent,
> interpreting and applying the law in similar
> circumstances." [Oliver v. Fiorino, 586 F.3d 898, 907
> (11th Cir. 2009)]. If there is no precedent on point, a
> right is clearly established only if the law has "earlier
> been developed in such [a] concrete and factually
> defined context to make it obvious to all reasonable
> government actors, in the defendant's place, that what
> he is doing violates federal law." Crawford v. Carroll,
> 529 F.3d 961, 977–78 (11th Cir. 2008) (quotation
> marks omitted). "Qualified immunity affords
> protection to all but the plainly incompetent or those
> who knowingly violate the law." Id. at 978 (quotation
> marks omitted). "We have noted that '[i]f the law does
> not put the [official] on notice that his conduct would
> be clearly unlawful, summary judgment based on
> qualified immunity is appropriate.'" See Vinyard v.
> Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting
> Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151,
> 2156–57, 150 L.Ed.2d 272 (2001)).

Muhammad, 388 F. App'x at 898.

Thus, if no precedent is found on point, a right is clearly established only

if the law has previously been developed in a concrete and factually defined

context to make it obvious to all reasonable government actors, in the

defendant's stead, that what he is doing violates the law.  Id. (citing Crawford

v. Carroll, 529 F.3d 961, 977-78 (11th Cir. 2008)).   It is clear, the First

Amendment "safeguards the free exercise of [one's] chosen form of religion."

Fetzer v. McDonough, No. 4:07cv464-MS, 2009 WL 3163147, at *5 (N.D. Fla.

Sept. 29, 2009) (not reported in F.Supp.2d) (quoting Cantwell v. State of Conn.,

310 U.S. 196, 303 (1940)).  Upon review, inmates, upon their confinement, do

not forfeit all First Amendment rights, including the right to exercise their

religious practices and beliefs.  Shepard, 657 F. Supp. 2d at 1343 (citations

omitted).  In fact,

> Inmates clearly retain protections afforded by the
> First Amendment, Pell v. Procunier, 417 U.S. 817, 822,
> 94 S. Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), including
> its directive that no law shall prohibit the free exercise
> of religion. See Cruz v. Beto, 405 U.S. 319, 92 S. Ct.
> 1079, 31 L.Ed.2d 263 (1972) (per curiam). Second,
> "[l]awful incarceration brings about the necessary
> withdrawal or limitation of many privileges and
> rights, a retraction justified by the considerations
> underlying our penal system." Price v. Johnston, 334
> U.S. 266, 285, 68 S. Ct. 1049, 1060, 92 L. Ed. 1356
> (1948). The limitations on the exercise of
> constitutional rights arise both from the fact of
> incarceration and from valid penological objectives—
> including deterrence of crime, rehabilitation of
> prisoners, and institutional security. Pell v. Procunier,
> supra, 417 U.S., at 822–823, 94 S. Ct., at 2804;
> Procunier v. Martinez, 416 U.S. 396, 412, 94 S. Ct.
> 1800, 1810–11, 40 L.Ed.2d 224 (1974).

O'Lone, 482 U.S. at 348.

As early as 1994, a federal district court recognized the Hebrew Israelite

faith as "a *bona fide* religion."   Jefferson v. Naiman, No. 1:05-cv-00127-MP-

WCS, 2007 WL 2827748, at *4 (N.D. Fla. Sept. 27, 2007) (relying on <u>Lawson v.</u>
<u>Dugger</u>, 844 F. Supp. 1538, 1545 (S.D. Fla. 1994), <u>rev'd sub nom.</u>, <u>Lawson v.</u>
<u>Singletary</u>, 85 F.3d 502 (11th Cir. 1996) (finding district court abused
discretion in refusing to alter or amend judgment to consider new policy
adopted by FDOC)), <u>subsequent determination</u>, 2009 WL 1884389 (N.D. Fla.
June 30, 2009). In <u>Jefferson</u>, a Hebrew Israelite inmate confined in the FDOC,
claimed the defendants failed to provide him with leaven-free vegetarian meals
during religious holidays as required by his beliefs, in violation of the First
Amendment. <u>Id</u>. at *1. Like Plaintiff, inmate Jefferson grieved the matter of
obtaining Passover meals prior to Passover. <u>Id</u>. at *8. As such, the district
court found, considered in a light most favorable to inmate Jefferson, the
evidence shows a triable issue as to whether Plaintiff's free exercise of religion
was substantially burdened during the high holy days. <u>Id</u>.

The next question employed is whether the applicable regulations "may
nonetheless be upheld if 'reasonably related to legitimate penological
interests.'" <u>Id</u>. (citing <u>O'Lone</u>, 482 U.S. at 350, applying <u>Turner v. Safley</u>, 482
U.S. 78 (1987)). However, the district court, in denying summary judgment,
found the <u>Turner</u> issues were not before it because the defendants had not
come forward with evidence to show how the denial of meals without leavening
during the holy days was reasonably related to legitimate penological interests.
<u>Id</u>.

Here, Defendant Thomas has not submitted an affidavit establishing that complying with Plaintiff's dietary requests was too costly, a threat to institutional security, disruptive to the operation of the jail, or any other reason usually found to be satisfactory under the reasonableness test of O'Lone.  Of note, vegan meals and kosher meals are provided at the jail, with approval by the Chaplain and/or medical department.  When Plaintiff grieved the matter, he was simply told, "[o]ur current policy does not include accommodating the Feast of Unleavened Bread Passover meal at this time." (Doc. 21-1 at 33).  On appeal, the summary of affirmance simply states: "Resolved Not in favor [of] the inmate[.]" Id.

The Court is not able to conclude, based on the record before it, whether the Defendant's decision was an exaggerated response to jail concerns or a reasonable one.  Like Jefferson, 2007 WL 2827748, at *8 (footnote omitted), "the Turner issues are not before the court on this motion for summary judgment."  Indeed, Defendant Thomas has not come forward with any evidence to show how the denial of vegan meals or other comparable meals without leavening during the Hebrew Israelite holy days was reasonably related to legitimate penological interests.

Under the Plaintiff's version of the facts, the law is clearly established at the time of the alleged deprivation.  As such, Defendant Thomas is not

entitled to qualified immunity.  The Court is unable, however, to proceed to conduct an inquiry under <u>Turner</u> and <u>O'Lone</u> based on this record.

### L.  Eleventh Amendment

Plaintiff also names Defendant Thomas in his official capacity, seeking monetary damages.  To the extent Plaintiff is seeking monetary damages against Defendant Thomas in his official capacity, his complaint for monetary damages fails as a matter of law.  Motion at 19-20.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam) (Eleventh Amendment immunity applies to bar a prisoner's section 1983 damage claim against a prison official in his official capacity).  As such, the only relief Plaintiff could possibly obtain from Defendant Thomas in his official capacity would be declaratory and injunctive relief; however, Plaintiff's claim for declaratory and injunctive relief is moot as Plaintiff is no longer confined in the PTDF.  Therefore, the Motion is due to be granted as to Plaintiff's suit against Defendant Thomas in his official capacity.

### M.  Punitive Damages

Again, Defendant Thomas asserts Plaintiff fails to state a plausible claim for relief against Defendant Thomas in his individual capacity.  Motion at 20. The Court has rejected this contention.

Plaintiff seeks punitive damages.  Under an equal protection claim, in order to obtain punitive damages, Plaintiff would need to show "an element of

intentional or purposeful discrimination." E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987) (quotation omitted) (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)), cert. denied, 485 U.S. 961 (1988).  This can be satisfied by showing the defendant's conduct is "motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others."  Hooks v. Brewer, 818 F. App'x 923, 931 (11th Cir. 2020) (quoting Smith v. Wade, 461 U.S. 30, 55 (1983)), cert. denied, 141 S. Ct. 1384 (2021).

Of note, "[a]n 'injury' is 'any harm, damage, wrong, or injustice.'"  Hoever, 993 F.3d at 1357 (citation omitted).  Punitive damages are not meant to compensate the individual injured.  Id. at 1358-59.  Indeed, the purpose of punitive damages "is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior."  Id. at 1359 (citing Memphis Cmty. Sch. Dist. Stachura, 477 U.S. 299, 306 n.9 (1986) (citation omitted)).  Thus, punitive damages are aimed at both retribution and deterrence.  Id. at 1359 (citation omitted).  Therefore, punitive damages may be used for punishment or deterrence for intentional or reckless invasions of the rights of an individual.  See Smith, 461 U.S. at 54-55.

The Court will not, at this stage of the litigation, find punitive damages are not recoverable as a matter of law.  Viewing the facts in the light most favorable to Plaintiff, the Court concludes Plaintiff has alleged facts to plausibly support his claim that Defendant Thomas acted with purposeful

discrimination or callous indifference to Plaintiff's rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

Thus, Defendant's Motion is due to be denied as to Plaintiff's claim for punitive damages.  Also, Plaintiff's claim for nominal damages remains.

Therefore, it is now

**ORDERED**:

Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED** with respect to the following: (1) Plaintiff failed to exhaust administrative remedies with respect to Plaintiff's request for a vegan diet; (2) the claim for monetary damages against Defendant Thomas pursuant to RLUIPA is barred; (3) the request for declaratory and injunctive relief is moot; (4) Plaintiff may not seek compensatory damages against Defendant Thomas in his individual capacity; (5) Plaintiff may not seek monetary damages against Defendant Thomas in his official capacity; and (6) dismissing the suit against Defendant Thomas in his official capacity.  In all other respects, Defendant's Motion for Summary Judgment is **DENIED**.

Therefore, partial summary judgment is entered as to the following claims: (1) for failure to receive a vegan diet; (2) for monetary damages against Defendant Thomas pursuant to RLUIPA; (3) for compensatory damages against Defendant Thomas in his individual capacity; (4) for monetary damages against Defendant Thomas in his official capacity; (5) for injunctive

and declaratory relief; (6) for the suit against Defendant Thomas in his official capacity; and (7) for the suit against Defendant Thomas based upon RLUIPA as the claim for declaratory and injunctive relief is moot.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of March, 2022.

BRIAN J. DAVIS
United States District Judge

sa 3/16
c:
Andrew A. Brown
Counsel of Record